UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| WORLDWIDE EQUIPMENT ENTERPRISES, INC., et al., | ) ) ) | Civil No. 15-63-ART |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| BROAN-NUTON LLC, et al., | ) ) | |
| Defendants. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On July 2, 2014, a fire burned down plaintiff Worldwide Equipment Enterprises, Inc.'s ("Worldwide") warehouse.  R. 1-1 at 4–5 (complaint); R. 121-3 at 3 (expert report of Daniel Dowell) ("The [warehouse] structure burned to the ground and is a total loss."); *see also* R. 92 at 14 (deposition of Daniel Dowell) (noting that the building was so damaged that it had to be completely demolished before being rebuilt).  The cause of the fire is disputed. But the plaintiffs claim that a defective bathroom ceiling fan, which the defendants designed, manufactured, and distributed, caused the fire.  *See* R. 1-1 ¶ 13.  As a result, the plaintiffs brought products-liability and negligence claims against the defendants for the real and personal property damages that the plaintiffs incurred as a result of the fire.  *See generally id.*

In support of their damages claims, the plaintiffs intend to call three expert witnesses. First, Daniel Dowell, a general contractor, will testify about the cost to rebuild Worldwide's warehouse.  Second, Cathy Sarrocco, a consultant on equipment loss, will testify about the "actual cash value" of Worldwide's business personal property at the time of the fire.

Because the fire completely destroyed the business personal property, however, Sarrocco was unable to examine the property to determine its condition, use, or makeup at the time of the fire.  R. 137 at 149.  So Sarrocco was able only to take the purchase price of the business personal property, inflate it to its cost in 2014, and then depreciate the value of the property based on its age at the time of the fire.  *Id.*  Finally, the plaintiffs intend to call Tim Call, an insurance adjuster from plaintiff Westfield Insurance Group, to testify that "the costs incurred to adjust [Worldwide's] claim were reasonable and necessary."  R. 121-2 at 2.  In reaching this opinion, Call relied on Dowell and Sarrocco's opinions.  *Id.*

The defendants now move for summary judgment because, according to them, the plaintiffs have failed to present sufficient evidence of real and personal property damages as a matter of law.  R. 139.[1]  Specifically, the defendants make two arguments.  First, they argue that replacement costs are not a proper measure of damages for real property loss under Kentucky law.  R. 139-1 at 11.  Second, the defendants argue that Sarrocco failed to present sufficient evidence of the fair market value of the business personal property at the time of the fire.  *Id.* at 16.  The defendants additionally move to exclude Call as an expert witness because his testimony relies solely on the opinions of Dowell and Sarrocco.  R. 121-1 at 11.

## I.

Summary judgment is appropriate if the record, when "viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  *Laster v. City of*

---

[1] The Court previously denied the defendants' motion for summary judgment on the plaintiffs' claim for inventory damages, R. 139-1 at 19;  R. 153.

2

*Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)).  The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once that party has made this showing, the non-moving party bears the burden of "showing that there is a genuine issue for trial."  *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986) (citing Fed. R. Civ. P. 56(e)).  The non-moving party cannot "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).  Thus, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## A.

### i.

First, the defendants argue that there is no genuine issue of material fact about the plaintiffs' real property damage claims because the plaintiffs have failed to present sufficient evidence of real property damages.  R. 139-1 at 11.  Under Kentucky law, the proper measure of damages for real property depends on the type of damage the building suffered.  *Ellison v. R & B Contr., Inc.*, 32 S.W.3d 66, 69–70 (Ky. 2000).  Specifically, the type of damages a plaintiff can recover depends on whether the building's injury was "temporary" or "permanent."  *Id.*  Whether the injury is temporary or permanent does not depend on the physical harm to the building; rather, the type of injury depends on "the cost of restoration."

*Id.*  Permanent injuries are those "where the cost to restore the property to substantially its original state exceeds the amount by which the injury decreased the property's values." *Id.* at 70.  For permanent injuries, a plaintiff can only recover diminution in fair market value. *Id.*  Restoration costs, on the other hand, are "an available remedy only in 'temporary' injury cases where the property may be restored to its original state at a cost less than the amount by which the market value of the property decreased as a result of the [injury]." *Id.*  So, under *Ellison*, a court determines if an injury is permanent or temporary by employing a simple mathematical equation:  Is diminution in fair market value or restoration costs greater?  If the former is greater, then the injury is temporary, and the plaintiffs can recover restoration costs.  If the latter is greater, though, then the plaintiffs are limited to recovering diminution in fair market value.  This rule ensures that plaintiffs recover the least amount of money necessary to make them whole.

The defendants argue, however, that the plaintiffs can only recover diminution in value because the warehouse was completely destroyed.   According to the defendants, *Ellison* also stands for the proposition that when there is a "total loss," the sole measure of damages is diminution in fair market value.  R. 139-1 at 11 (citing *Ellison*, 32 S.W.3d at 69). Importantly, *Ellison* does not mention "total loss."[2]  Instead, the defendants rely on *Carter v. Coalfield Lumber Company*, 331 S.W.3d 271, 276 (Ky. Ct. App. 2010), for their

---

[2] In a footnote, *Ellison* quotes a case that discusses "total loss."  32 S.W.3d at 70 n.4 (quoting *Edwards v. Webb Constr. Co., Inc. v. Duff*, 554 S.W.2d 909, 911 (Ky. Ct. App. 1977)).  But *Duff* mentions "total loss" in the insurance sense, not in the physical sense—a car is "totaled" and considered a "total loss" when the value of the car is less than the cost to repair it.  *See* 554 S.W.2d at 911.  Moreover, the court in *Duff* announced the same rule as *Ellison*: "A test of whether or not the property may be reasonably repaired is whether or not the cost of repair exceeds the difference in market value before and after the injury.  If the cost of repairs (or rebuilding) exceeds the difference in the market value of the property before and after the injury, then such cost is manifestly unreasonable and the building may not be reasonably repaired at the expense of the tort-feasor[.]"  *Id.*

4

interpretation of *Ellison*.  In *Carter*, the court stated (in dicta) that in cases where property suffers "a complete loss," "*i.e.* where it cannot be repaired but instead must be replaced, . . . evidence of diminution in value alone is sufficient to overcome a motion for directed verdict as well as a motion for [a judgment notwithstanding the verdict]."  *Id.* at 277.  Indeed, the court in *Carter* said, "it would be disingenuous for the [plaintiffs] to bring forth evidence of repair cost when their evidence was that the property had already been determined to be a complete loss by their expert."  *Id.*  When property must be replaced, the court went on, the party claiming injury is required to present direct evidence of fair market value.  *Id.*  Here, the plaintiffs' warehouse was completely destroyed by the fire.  So, the defendants argue, this building suffered a "total loss" under *Carter*, which means that the plaintiffs can only recover diminution in fair market value.   According to defendants, therefore, Daniel Dowell's testimony about replacement costs is irrelevant to question of real property damages.

An analysis of *Ellison*, however, does not support *Carter*'s interpretation of the rule. "In interpreting state law, we apply the law of the state's highest court, and when the state's highest court has not ruled on an issue, we must ascertain the state law from all relevant data, including the state's intermediate court decisions."  *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 544 (6th Cir. 2012).  Here, the Kentucky Supreme Court has ruled on this issue in *Ellison*, while *Carter* is merely persuasive authority.   Although the  *Carter* court based its reasoning on *Ellison*'s use of the word "temporary": "We find little similarity between the terms 'temporary' and 'completely destroyed' and, in light of no evidence that the property could be repaired, opine that the jury could not have found damages for repair."  331 S.W.3d

5

at 277.    Such a distinction between "temporary" and "completely destroyed" may seem appropriate given the plain meaning of the word "temporary."[3]  But the *Ellison* court did not define "temporary" using its plain meaning or in reference to the physical nature of the injury.   Instead, the court used "temporary" to refer to a situation in which diminution in value is greater than restoration costs.  So the *Carter* court's distinction between "temporary" and "completely destroyed" is misplaced given *Ellison*'s definition of temporary.

Moreover, the reasoning in *Ellison* demonstrates that the court was only concerned with the mathematical equation it put forward rather than with the physical injury to the building.   The *Ellison* court explained: "As a practical matter, therefore, the amount by which the injury to the property diminishes its total value operates as an upper limit on any damage recovery.   Claimants may receive restoration cost damages in injury-to-property cases only when compensation in the form of restoration costs is the least expensive way to make those claimants whole."  32 S.W.3d at 69.  Thus, under *Ellison*, a plaintiff can recover replacement costs in "total loss" cases as long as these costs are lower than the diminution in fair market value.

And that makes sense.  For example, imagine that a house has just been constructed. It sold for $500,000 (not including the value of the land), but only cost $400,000 to build. Then, a week after it sold, it burned down completely in a fire.  In that situation, the diminution in fair market value of the house is $500,000, and the replacement cost would be

---

[3] The Kentucky Supreme Court's use of the words "temporary" and "permanent" in *Ellison* does give one pause.  A plain reading of these terms suggests that they refer to the type of injury the building suffered.  The Kentucky Supreme Court, however, has the power to define terms how it chooses.  Here, the court chose to define "temporary" and "permanent" through a mathematical formula.  Of course, had the court instead chosen to define the measure of damages as something like "diminution in fair market value except in situations where replacement costs are lower than diminution in value," this would have been an easy question.  The court did not choose to define the terms as such, though.  And it is not our job to second guess the court's decision.

$400,000.  So, applying the equation from *Ellison*, this is a temporary injury because the restoration costs are lower than the diminution in fair market value, and the plaintiffs can therefore recover replacement costs.  As such, it is possible under *Ellison* for a plaintiff to recover replacement costs even in a total loss situation.  Whether or not the plaintiffs in this case can recover replacement costs, then, is a question of fact for the jury.

The defendants insist, however, that this Court should distinguish between the words "repair" or "restoration," as used in *Ellison*, and "replacement."  The defendants argue that here, there is nothing to "repair" or "restore," which are the only two terms *Ellison* uses to describe the type of costs a plaintiff can recover as an alternative to diminution in value.  So, according to the defendants, the Court would be creating a new rule by extending the rule in *Ellison* to replacement costs.  This argument fails for several reasons.  First, the language in *Ellison* does not explicitly exclude replacement costs.  For example, *Ellison* talks repeatedly about the "cost to restore the property to substantially its original state."  *See, e.g.*, 32 S.W.3d at 70.  Such language could refer to repair costs or replacement costs—when a person replaces a destroyed building, he restores it to its original state.  Second, the word "restore" does not only mean repair.  Webster's International Dictionary defines "restore" in part as "to bring back or put back into a former or original state: renew: as rebuild or reconstruct . . . ."  Webster's Third New International Dictionary 1936 (2002).  So the word "restoration" extends to rebuilding or replacement.

Finally, any other interpretation of *Ellison* would set an unfair precedent for defendants in cases of total loss.  Normally, defendants are liable only for the lesser measure of damages.  If we apply the defendants' rule, however, defendants would always be liable

for diminution in fair market value in total loss cases, even if the replacement costs were in fact lower. Such a rule would make plaintiffs more than whole in certain cases of total loss. The rule from *Ellison*, therefore, extends to cases of total loss and to replacement costs. Thus, a plaintiff can recover replacement costs in a "total loss" situation if the replacement costs are lower than the diminution in fair market value of the property.

ii.

The defendants also seem to argue that even if replacement costs are a proper measure of damages for real property loss, the plaintiffs still had to present evidence of diminution in fair market value. But under *Ellison*, a plaintiff does not have to present evidence of all possible measurements of damages to meet his burden. There, the court stated that "a plaintiff seeking restoration costs damages in an injury-to-property case need not introduce evidence of a diminution in the fair market value of the property in order to state a prima facie case and overcome a motion for directed verdict because reasonable inferences may be drawn from evidence of restoration costs." *Ellison*, 32 S.W.3d at 74. Thus, the court held, "the Court of Appeals incorrectly concluded that the construction companies should have been granted a directed verdict because of the [plaintiffs'] failure to introduce evidence of a diminution in fair market value of their property during the plaintiffs' case-in-chief." *Id.* at 75. Instead, evidence of restoration costs "created a reasonable inference as to the diminution in fair market value of the subject property[.]" *Id.*

Accordingly, the plaintiffs only have to introduce evidence of replacement costs to prove their prima facie case. *See Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 460–61 (6th Cir. 2012) ("*Ellison* stands for the principle that when evidence of both

8

restoration cost and fair market value has been presented to the jury, the jury must be instructed to award the lesser of the two amounts. Jury instructions flow from the evidence presented, not the other way around. Defendant could have, but did not, present any evidence of fair market value."). The defendants can then rebut this evidence with evidence of diminution in value. If the defendants prove that diminution in value is lesser than replacement costs, then the damage is permanent and the jury cannot consider the plaintiffs' evidence of replacement costs. However, if the defendants choose not to present any evidence of diminution in value, then the presumption is that the diminution in value is equal to the replacement costs. *See Ellison*, 32 S.W.3d at 74 ("In the absence of evidence to the contrary, it may be presumed that the anticipated cost of repair would reduce the value by an equal amount [as diminution in value would]." (quoting *Newsome v. Billips*, 671 S.W.2d 252, 255 (Ky. Ct. App. 1984)) (internal quotation marks omitted)). As such, the plaintiffs here presented sufficient evidence of real property damages. The defendants' motion for summary judgment on real property damages must therefore be denied.

## B.

The defendants also move for summary judgment on the plaintiffs' business-personal-property-damages claims. As grounds, the defendants argue that the plaintiffs did not present sufficient evidence of damages. The measure of damages to personal property in Kentucky is "the difference in the fair market value of the property before and after the accident." *McCarty v. Hall*, 697 S.W.2d 955, 956 (Ky. Ct. App. 1985). When personal property has been destroyed, as it was here, the measure of damages "is the reasonable market value at the time and place of the injury of the property so destroyed." *S. Ry. in Ky.*

9

*v. Ky. Grocery Co.*, 178 S.W. 1162, 1163 (Ky. 1915).  Here, the plaintiffs have based their business personal property damage claim on the testimony of Cathy Sarrocco.  But Sarrocco did not calculate the fair market value of the plaintiffs' personal property.  R. 137 at 114, 153 (testimony of Sarrocco at *Daubert* hearing).  Instead, she calculated what she called the "actual cash value" of the items.  So, the defendants argue, Sarrocco's testimony regarding the business personal property damages is irrelevant because she used an improper measure of damages.  And summary judgment is therefore appropriate, they say, because the plaintiffs have no evidence of business personal property damages.

Under Kentucky law, however, "actual cash value" as it is used in the insurance context is evidence of market value.  *State Auto Mut. Ins. v. Cox*, 218 S.W.2d 46, 47 (Ky. 1949).  And here, according to the plaintiffs at least, Sarrocco calculated the "actual cash value."  *See, e.g.*, R. 137 at 94, 151 (Sarrocco testimony) (stating that she found the "actual cash value" for each destroyed item).  So, the plaintiffs argue, her testimony presents sufficient evidence of business personal property damages.

The question, then, is whether Sarrocco has presented sufficient evidence of the actual cash value of the plaintiffs' business personal property.  Kentucky courts define "actual cash value" as "the sum of money the insured goods would have brought for cash, at the market price, at the time when, and place where, they were destroyed."  *State Auto*, 218 S.W.2d at 47.  Sarrocco stated at the *Daubert* hearing that normally when calculating actual cash value, she would "look at the current replacement cost, [and] apply [it] based on age, condition, use, and life expectancy."  R. 137 at 149.  Such a calculation, it seems, would give Sarrocco the actual cash value under Kentucky law.  But here, Sarrocco did not know any details about the

items other than their age.  She did not know their condition, their use, or their life expectancy.  *Id.*  She did not even know what the items were made of—for all she knew, they could have been made from stainless steel or some cheap, corrosive metal.  *See id.* at 150 (stating that for the one ton ram, she did not know the life expectancy "not knowing . . . the specs of this particular ton ram.  There's not enough information about this ton ram to know whether it's going to last.  I mean, obviously, if it's Snap-On, it's going to last a hundred years.  If it's Craftsman, it's probably not going to last that long.").  Because Sarrocco did not know any details about the personal property items, she used a 100-year life expectancy for every item to depreciate the item's value.  *Id.* at 151.  But such a depreciation does not actually result in the "sum of money the insured goods would have bought for cash, at the market price, at the time when, and place where, they were destroyed."  *State Auto*, 218 S.W.2d at 47.  Instead, Sarrocco's figures are just a rough estimate of what the items were worth.  And Sarrocco did not try spot-checking the items, i.e. online, to see what a willing buyer would pay and a willing seller would accept for the items based on their age and condition at the time of the fire.  So she cannot testify to the "actual cash value" of the personal property under Kentucky law.

The plaintiffs also seem to argue that the Court should admit Sarrocco's testimony because the items were totally destroyed here, so there was no way for Sarrocco to know the condition of the items, their use, or what materials the items were made of.  But the plaintiffs cite no case law that allows us to substitute a different measure of "actual cash value" in lieu of fair market value.  *See* R. 144-1 at 38–39.  And the Court can find none.  Moreover, although there was no way for Sarrocco to know these things, the plaintiffs could have

provided Sarrocco with statements from Worldwide's employees about the specific personal property and its condition at the time the fire occurred. But the plaintiffs failed to provide this information, so this argument fails.

Finally, the plaintiffs point out that Sarrocco testified that there is usually little difference between actual cash value and fair market value. R. 137 at 159. So her actual cash value estimates should be admissible as evidence of fair market value. The problem, though, is that Sarrocco did nothing to verify that this assumption was true in *this case*. *Id.* So the Court has no way of knowing if her actual cash value estimates were the equivalent of fair market value here. As such, Sarrocco's testimony with respect to the business personal property damages is not admissible and must be excluded. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (instructing that expert testimony "must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." (internal quotation marks omitted)). And because the plaintiffs' have not offered any other evidence of business personal property damages, the defendants' motion for partial summary judgment on the plaintiffs' business personal property damage claims must be granted.

## II.

The defendants also argue that the Court should exclude the testimony of Tim Call, the insurance adjuster expert. R. 121-1 at 11. Expert testimony is admissible only if it satisfies three requirements: "First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third,

the testimony must be reliable." *In re Scrap Metal.*, 527 F.3d at 528–29 (internal quotation marks omitted).

First, the defendants argue that Call's testimony is unreliable because he relies solely on the opinion of Dowell,[4] and thus his testimony must be excluded.  R. 121-1 at 11. Generally, an expert may rely on facts and data that he "would normally use in forming an opinion in his area of expertise."  *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).  But, the defendants assert, Call's testimony "is simply a reiteration of the opinions of the Plaintiffs and their proposed experts."  R. 121-1 at 14 (citations omitted).  Additionally, defendants claim that Call simply "relied on these opinions as accurate and valid without putting 'pen to paper' to determine their reasonableness."  *Id.*  So, according to the defendants, Call's testimony is unreliable.

But Call did not rely solely on the opinion of Dowell.  Call also inspected the property and interviewed Worldwide's employees.  R. 93-1 at 10.  Then, relying on the reports from Dowell *as well as* his inspection of the site and interviews with Worldwide employees, Call arrived at a reasonable amount for the total real property loss suffered by Worldwide.   After Call reached this estimate, he compared it to a computer-generated valuation report done on Westfield's system that estimated the replacement cost of the building "based on the square footage and other commonly found components within a building such as [Worldwide's warehouse]."  *Id.* at 16–17.  Call used this computer-based estimate as a "further substantiation of the correct value of the building."  *Id.* at 17.  So Call

---

[4] The defendants argue that Call should be excluded because he relied solely on both Dowell and Sarrocco's opinions.  But because the Court granted the defendants' motion for summary judgment on the plaintiffs' business personal property loss claims, Call's testimony is limited to his opinion on the plaintiffs' real property damages.

did put "pen to paper" to determine the reasonableness of Dowell's estimate.  Because Call did not rely solely on the opinion of Dowell in reaching his conclusions, the defendants' first argument fails.

The defendants next argue that Call's testimony should be excluded because it is irrelevant.  Specifically, the defendants argue that whether "the costs incurred to adjust this claim were reasonable and necessary" has no bearing on the issue of damages in this case. R. 121-1 at 17.  But Westfield has asserted a subrogation claim against the defendants arising from the loss and its payment to Worldwide due to the insurance policy.  Under Kentucky law, an element of a subrogation claim is that the "subrogee is not a volunteer" and the payment was not voluntary.  *Wine v. Globe American Cas. Co.*, 917 S.W.2d 558, 561 (Ky. 1996).  So Westfield must prove that the payment it made was required under its insurance policy.  And Call's testimony is relevant to proving that by showing that the amount Westfield paid was reasonable, and thus that Westfield was required to make the payment under the insurance policy.  Call's testimony is therefore relevant.  Accordingly, the defendants' motion to exclude Call must be denied.

Accordingly, it is **ORDERED**:

(1)    The defendants' motion for summary judgment, R. 139, is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** with respect to the plaintiffs' business personal property damages.  But it is **DENIED** with respect to the plaintiffs' real property damages.

(2)     The defendants' motion to exclude the testimony of Tim Call, R. 121, is

**DENIED**.

This the 9th day of June, 2016.

Signed By:

*__Amul R. Thapar__*  AT

**United States District Judge**